CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
MAY 16 2005
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| DONALD RAY HAMILTON, JR., | ) | CASE NO. 3:04CV00071 |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| JOHN GORDON, *et al*, | ) | By: B. WAUGH CRIGLER |
| Defendants, | ) | U.S. MAGISTRATE JUDGE |

Before the court are the February 14, 2005 motion for summary judgment filed by defendant John Gordon (hereafter "Gordon"), the February 15, 2005 motion for summary judgment filed by defendants Accustaff, Inc., Randstad US, L.P. and Randstad General Partner (US), LLC (hereafter referred to as "the Accustaff defendants" or "Accustaff"), and the February 15, 2005 motion for summary judgment filed by Great Divide Insurance Company (hereafter "Great Divide"). The motions are before the undersigned under the authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for their disposition. For the following reasons, the undersigned RECOMMENDS that an order enter DISMISSING the motion for summary judgment filed by Great Divide as withdrawn, GRANTING, in part, the motion filed by defendant Gordon to the extent it seeks a determination that he was a borrowed servant and employee of Builders First, GRANTING the motion filed by the Accustaff defendants and DISMISSING them from this action, and DENYING, as withdrawn, the motion filed by Great Divide.

**PROCEDURAL HISTORY**

This diversity negligence action arises from injuries sustained by plaintiff at a lumber yard in

-1-

Culpeper, Virginia owned by defendant Builders First Source-Atlantic Group, Inc. (hereafter "Builders First") on November 10, 1999. Plaintiff, the driver of a tractor-trailer employed by Wilt Trucking ("Wilt") and carrying a load of microlam joists used in fabricating roofing trusses, was injured when, during the unloading process at the Builders First yard, one or more joists fell from the trailer, hitting him in the head. In a single count Complaint, plaintiff alleges that defendant Gordon, the forklift operator unloading the joists at the time of the accident, failed to exercise due care for the safety of others, including plaintiff, and to warn of unsafe conditions relating to the unloading and the operation of his forklift, thereby causing plaintiff's injuries. In addition, plaintiff alleges *respondeat superior* liability on the part of Builders First and Accustaff, the temporary employment agency that placed Gordon with Builders First. Both Randstad entities are successors in interest to Accustaff. Finally, in accordance with VA CODE § 38.2-2206, plaintiff served notice on Great Divide, the insurer of plaintiff's vehicle, under the underinsured or uninsured motorist provisions of the Great Divide policy, and its counsel has entered an appearance in the case.

## FACTUAL BACKGROUND

In April of 1999, John Gordon was hired by Accustaff, a temporary employment agency. Deposition of John William Gordon (hereafter "Gordon Dep.") at 6-9. Thereafter Accustaff assigned Gordon to Builders First at its Culpeper, Virginia plant to perform the duties of a forklift operator. Gordon Dep. at 11; Deposition of Conrad LaBossiere (hereafter "LaBossiere Dep.") at 24. Gordon previously had been certified and had some five years experience as a forklift operator. Gordon Dep. at 9. Once at Builders First, Gordon received further training in basic forklift operations and safety, after which he took a written test. LaBossiere Dep. at 26-29; Gordon Dep. at 21. He was then assigned to the warehouse receiving department where he was supervised by Howard Martin. Deposition of Howard Martin (hereafter "Martin Dep.") at 8. Sometime before the accident, Gordon was reassigned

to the yard under the supervision of Dominick Dyson (hereafter "Dyson"). Deposition of Dominick Dyson (hereafter "Dyson Dep.") at 9. Conrad LaBossiere was the Builders First employee in charge of the entire Culpeper operation. LaBossiere Dep. at 7.

Although the legal nature of Gordon's temporary employment at Builders First is contested by the parties, there is no factual dispute that, during his tenure as a forklift operator in the Culpeper yard, Gordon was "instructed and controlled" by Builders First. LaBossiere Dep. at 31-32. Gordon took his day-to-day orders from Dyson, operated equipment owned by Builders First, and adhered to the Builders First break schedule and dress code. Dyson Dep. at 20-21. Builders First determined Gordon's hours, including whether he worked overtime. Dyson Dep. at 18-19. Moreover, Builders First retained the right to reprimand Gordon for any on-the-job infraction and to terminate his employment. LaBossiere Dep. at 32-35; Dyson Dep. at 9-10. According to protocol previously established by the parties, Builders First would effectuate the reprimand or termination of a temporary employee by calling Accustaff to write up the employee or to withdraw him from Builders First's service. Id. Accustaff exercised no supervisory authority over Gordon while he was at Builders First. Gordon Dep. at 37. Accustaff's actual involvement with Gordon was limited to placing him with Builders First, interfacing with Conrad LaBossiere to ensure Builders First's continued satisfaction with Gordon's performance, collecting his wages from Builders First, and, in turn, issuing his paycheck.[1] LaBossiere Dep. at 12, 40.

At the time of the accident, plaintiff was employed by Wilt as a truck driver. Plaintiff's

---

[1] There is no direct evidence before the court showing that Accustaff collected Gordon's wages from Builders First and then issued his paycheck, only Accustaff's assertions of this fact in its brief which the parties do not dispute. See Motion for Summary Judgment by the Accustaff defendants at 4; Plaintiff's Memorandum in Response to Motion for Summary Judgment Filed by Defendants Accustaff and Randstad at 1; Memorandum of Points and Authorities in Support of Defendant John W. Gordon's Motion for Summary Judgment and Declaratory Relief at 9.

-3-

Answers to Interrogatories Propounded by Defendant John Gordon (hereafter "Plaintiff's Int.") at 3, 5. On the morning of November 10, 1999, he drove a flatbed tractor-trailer to the Builders First yard in Culpeper, Virginia to deliver a load of microlam joists. Plaintiff's Int. at 20; Gordon Dep. at 25; LaBossiere Dep. at 17. Here plaintiff's account of the accident diverges from that of defendant Gordon. Plaintiff states that, once he parked in the yard, he released the straps that tied down his load, spoke with Gordon briefly, and then remained on the driver's side of the trailer while Gordon began to unload the joists using the forklift. Plaintiff's Int. at 20; Gordon Dep. at 28. Gordon has testified, on the other hand, that, in accordance with Builders First's policy, he instructed plaintiff to remain in his cab or in the Builders First break room during the unloading process. Gordon Dep. at 22. Gordon maintains that plaintiff initially heeded this command and returned to the cab of his truck, at which time Gordon began to unload the joists. Gordon Dep. at 22, 24-25. Despite this conflict in testimony, it is undisputed that, at the time of the accident, plaintiff was standing on the driver's side of the trailer out of Gordon's view while Gordon proceeded to unload joists on the trailer's passenger side with his forklift. Gordon Dep. at 25-26.

Gordon testified that he unloaded a first bundle of joists from plaintiff's trailer without incident. When he maneuvered the forklift to unload the second load, however, the forks of the lift struck and dislodged at least one bundle of joists on the driver's side of the trailer, which, in turn, fell on the plaintiff. Gordon Dep. at 27. Gordon did not see the bundle of joists fall but heard them when they hit the ground. Gordon Dep. at 27-28. At this point, Gordon exited the forklift and rounded the trailer to find out what had happened. Gordon Dep. at 31. There he found plaintiff lying on the ground "in a daze." Gordon Dep. at 32. Plaintiff has testified that the bundle of joists hit him in the head and left side of his body, causing him to lose consciousness and suffer serious injury. Plaintiff's Int. at 20.

**SUMMARY JUDGMENT STANDARD**

-4-

Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . . ." FED. R. CIV. P. 56(c). In deciding summary judgment "the evidence of the nonmoving party is to be believed and all justifiable inferences must be drawn in its favor." *American Legion Post 7 v. City of Durham*, 239 F.3d 601, 605 (4th Cir. 2001). A "mere scintilla" of proof, however, will not prevent entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). The question is "not whether there is literally no evidence, but whether there is any upon which a jury could properly [find for the nonmoving party]." *Id.*

## CONTENTIONS OF THE PARTIES

Gordon, Accustaff and Great Divide initially filed motions for summary judgment with accompanying memoranda. By letter of counsel to the court dated March 29, 2005, however, Great Divide withdrew its motion, and accordingly, the undersigned will recommend that the motion be denied as withdrawn. The remaining motions filed by Gordon and Accustaff present the same essential issue, namely whether there are genuine facts in dispute that Gordon, at the time of plaintiff's injury, was a borrowed servant of Builders First. If so, Builders First would be liable for any negligence on the part of Gordon; if not Accustaff would remain liable for any negligence on his part under the doctrine of *respondeat superior*.[2]

In that connection, Gordon and Accustaff argue that, under Virginia law, the key inquiry in determining servant status should focus on which of the entities possessed the power to control the Gordon's activities and working environment. *See Ideal Steam Laundry v. Williams*, 153 Va. 176, 180

---

[2] In his memorandum supporting the motion for summary judgment, Gordon appeared to seek indemnification, as a matter of law, against Builders First. At oral argument, however, Gordon's counsel disavowed this contention and, instead, focused entirely on the question whether Gordon was a borrowed servant of Builders First at the time of the accident.

-5-

(1929); *Coker v. Gunter*, 191 Va. 747, 750 (1951); *Metro Machine Corp. v. Mizenko*, 244 Va. 78, 83 (1992). They further call the court's attention to eight additional factors referred to in *Mizenko*, which, though less probative than the factor relating to power of control, are important to take into account. They include (1) whether the work performed is that of the borrowing employer; (2) whether there was an agreement between the original employer and the borrowing employer; (3) whether the employee acquiesced in the new work situation; (4) whether the original employer terminated its relationship with the employee; (5) which employer is responsible for furnishing the work place, work tools, and working conditions; (6) the length of the temporary employment and whether it implied acquiescence by the employee; (7) which employer had the right to discharge the employee; and (8) which employer was required to pay the employee. *Id.* at 82.

Gordon and Accustaff take the position there are no genuine issues fact in dispute that Gordon was the borrowed servant of Builders First at the time of plaintiff's injury. They offer that the evidence shows that, while at Builders First, Gordon underwent training as a forklift operator, received his orders from and was supervised exclusively by Builders First personnel, had to conform to the Builders First dress code, was subject to discipline and termination by Builders First and was at all times pertinent hereto engaged in the business of Builders First on Builders First property. They also point to the evidence that Builders First set Gordon's hours and determined whether he would work overtime. Accustaff and Gordon believe the evidence in the case satisfies essentially every factor to be considered under the *Mizenko* standard. Therefore, as a matter of law, these defendants assert that *respondeat superior* liability for any negligent on the part of the borrowed servant should be imputed to the borrowing employer, here Builders First, and not to the lending employer, Accustaff. *See Coker v. Gunter*, 191 Va. 747, 750 (1951); *Mizenko, supra*; *Ideal Steam Laundry v. Williams*, 153 Va. 176, 180 (1929). Consequently, the Accustaff defendants move the court to dismiss them from this action.

-6-

The only party challenging whether the facts establish, as a matter of law, that Gordon was Builder's First's employee/agent at the time of the accident is Builders First, and this challenge was not asserted until oral argument. Plaintiff has acknowledged the propriety of the position taken by Gordon and Accustaff and would consent to a voluntary dismissal of Accustaff as a party but for Builders First's verbal contention that, were Accustaff voluntarily dismissed, it would press the right to present evidence for consideration by the court and jury that Gordon remained an Accustaff's servant, thus subjecting Accustaff to liability for any negligence on his part under the doctrine of *respondeat superior*. Suffice it to say that Builders First contends there are genuine issues of material fact concerning whether Gordon was a borrowed servant, and that summary judgment on that issue should be denied.

In support of its contention, Builders First referred, without specific citation, to what it believed was the deposition testimony of Conrad LaBossiere and offered that LaBossiere explained the longstanding business practice between Accustaff and Builders First in which Accustaff maintained the right to participate in or control any decisions to discipline or terminate Gordon. While Builders First acknowledged it set Gordon's work schedule, it again offered without specific reference evidence that Accustaff determined Gordon's holiday schedule, and its view of a statement by LaBossiere that, at the time of the accident, Gordon was not working for Builders First but for Accustaff. Accordingly, Builders First offers that, at minimum, there is a sufficient dispute in the facts to allow a trier of fact to determine Gordon's borrowed servant status, and that the motion for summary judgment on this issue should be denied.

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS OF LAW**

Applying the control test as earlier articulated by *Coker v. Gunter*, 191 Va. 747, 750 (1951) and then refined in *Metro Machine Corp. v. Mizenko*, 244 Va. 78 (1992), the undersigned is of the view

that there are no genuine issues of material fact that Gordon was a borrowed servant in the employ of Builders First, with all the legal consequences under the doctrine of *respondeat superior* of that relationship.³ The undisputed evidence reveals that Gordon had been employed by Builders First as a forklift driver for seven continuous months (from April through November of 1999) prior to the accident. His immediate and ultimate supervisors at the Culpeper yard (Dyson and LaBossiere) were both full-time employees of Builders First. They fixed his work schedule and assigned his daily tasks, including those on the day of the accident. Moreover, Gordon was operating the forklift on behalf of Builders First, by agreement with Accustaff and his own acquiescence, at the time of the accident. Builders First furnished Gordon's work place and the tools of his trade, including the fork lift. Builders First had the right at any time to call Accustaff and direct that he be disciplined or discharged from its service.⁴ And, it was Builders First who paid the wages Gordon received for his work.

---

³ In reality, a number of these "additional" *Mizenko* factors are nothing more than specific indicia of the more generally defined power of control. *See Ideal Steam Laundry*, 153 Va. at 180 (noting that "the power of substitution or discharge, the payment of wages, and other circumstances bearing upon the relation . . . are not the ultimate facts, but only those more or less useful in determining whose is the work and whose is the power of control.")

⁴ To put this observation of fact in its proper context, LaBossiere deposition testimony on this point is instructive:

BANCROFT: "[I]f Mr. Gordon should do something wrong on a particular job, you, Mr. LaBossiere, and Mr. Dyson had authority to call up AccuStaff and say we don't want Mr. Gordon here tomorrow?"
LABOSSIERE: "That is correct."
BANCROFT: "Or you could even tell Mr. Gordon to leave at that time?"
LABOSSIERE: "I would call Accustaff and told [sic] them."
BANCROFT: "That I'm telling him to get off the job right now?"
LABOSSIERE: "No, I would call them and tell them, you need to come get him. You need to handle this. They handled all discipline action."
BANCROFT: *"But you had control as to whether or not that guy was going to show up –"*
LABOSSIERE: *"Yes, sir."*
BANCROFT: *"–the next day and go to work?"*
LABOSSIERE: *"Yes, sir."*

-8-

Meanwhile, there is no evidence in the record demonstrating that Accustaff exercised any day-to-day supervisory authority over Gordon while he served as a forklift operator at Builders First. Accustaff only maintained an administrative connection to Gordon's labor by (a) making periodic phone calls to LaBossiere to ensure Builders First' continuing satisfaction with Gordon's performance, (b) collecting from Builders First and then disbursing Gordon's wages, and (c) remaining ready to effectuate Gordon's discipline and/or termination should Builders First direct.[5] While the undersigned acknowledges that LaBossiere made the statement in his deposition that "[Gordon] did not work for us; he worked for the temp agency . . .," the undersigned does not believe that the statement should be read out of context.[6] Some might see this as self serving and dismiss it out of hand. The undersigned would rather view it as a truth in that Gordon did not "work" for Builders First in one sense, as he was employed by Accustaff. Yet, he *did work* for Builders First in that, as a matter of law, he was a borrowed servant in every sense of the term under Virginia law. In the undersigned's view, therefore, Gordon was a borrowed servant of Builders First and, as a result, only Builders First and not Accustaff may not be held liable for Gordon's alleged negligence under a theory of *respondeat superior*.

Accordingly, the undersigned RECOMMENDS that the presiding judge enter an order DISMISSING the motion for summary judgment filed by Great Divide as withdrawn, GRANTING, in part, Gordon's motion for summary judgment, to the extent his motion seeks a determination that, at all

---

See LaBossiere Dep. 32-33 (emphasis added). Obviously, if LaBossiere controlled whether Gordon was invited back to work at the Culpeper plant on any given day, he exercised authority over the termination of Gordon's employment with Builders First–the employment here under consideration–though not Gordon's employment with AccuStaff.

[5] The undersigned is unaware of any evidence in the record corroborating Builders First's argument, presented orally at the hearing on summary judgment, that Accustaff set Gordon's holiday schedule.

[6] See LaBossiere Dep. at 13.

-9-

times, he was a borrowed servant and employee of Builders First, and GRANTING the Accustaff defendants' motion for summary judgment and DISMISSING the Accustaff defendants from this action.

The Clerk is directed to immediately transmit the record in this case to the Hon. James H. Michael, Jr., Senior United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/
U. S. Magistrate Judge

5/16/05
Date